UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| DOUGLAS J. TURNER, ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | Case No. 1:06CV63 CDP |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

Movant Douglas J. Turner brings this case under 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence. On May 5, 2005, I sentenced Turner to 151 months imprisonment following his plea of guilty to one count of possession with intent to distribute five grams or more of cocaine base. *United States v. Douglas J. Turner*, 1:04CR130CDP.

Turner did not appeal his sentence. However, on February 8, 2006, he filed a motion to amend, clarify, and/or correct sentence under Rule 36, arguing that his sentence should have been run concurrently with a state sentence that he was then serving. The government opposed the motion, pointing out that Rule 36 did not apply because there was no variance between my oral pronouncement of sentence and the written judgment. At the time of the sentencing in the federal case, Turner was facing probation revocation hearings in state court, but his probation had not

then been revoked. In fact, at the sentencing, no mention was made of whether the sentence would be concurrent or consecutive with any potential state sentence. On June 19, 2006, I denied the motion, for the reasons stated by the government in its opposition.

Turner appealed that denial of the Rule 36 motion, and the Court of Appeals affirmed, in an unpublished per curiam decision. *United States v. Douglas J. Turner*, No. 06-2690 (8th Cir. Oct. 5, 2007) (slip Op.) (docket entry # 82 in Case No. 1:04CR130CDP).

In 2008 Turner filed a motion for retroactive application of the newly amended crack cocaine guidelines, and I granted that motion on May 5, 2008, reducing his sentence to 121 months imprisonment.

Turner has filed several supplements and other motions since he initially filed this § 2255 motion, and his grounds for relief have changed somewhat, depending on which motion or brief is reviewed. I will therefore set out the various things he has alleged in some detail.

Turner's initial motion was captioned as a petition for writ of mandamus, but because it alleged ineffective assistance of counsel, the Court treated it as a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. That initial motion alleged that Turner's attorney told him not to appeal his case

because the government had a witness who would testify against him, which would result in his getting a longer sentence. He also argued that the traffic stop that resulted in his arrest was made without probable cause, was pretextual, and that his initial defense counsel knew this and failed to raise it with the court.

A few days after he filed the initial motion, Turner filed another § 2255 motion – this time on the Court-provided form for § 2255 motions – which the Court docketed as a supplemental motion. (Docket entry # 2). That second motion alleged that his initial trial counsel was ineffective because he also represented a prosecution witness who was going to testify against Turner, and that his second trial counsel was ineffective because he told Turner that if he "did not accept the plea deal at sentencing, the court could impose an upward departure resulting in a lengthier sentence based on a proffer by gov't witness" – this appears to be the same claim as that raised in the initial motion.

In a "motion to compel" filed in June of 2006 (docket entry #7), Turner argued that the Associate Circuit Court for Scott County, Missouri, denied him procedural due process by not holding a preliminary hearing and by not providing certain documents that he believes would show the warrant for his arrest (which resulted in the seizure of the crack and cocaine forming the basis of this federal case) was deficient.

In a motion for leave to supplement his reply filed in January of 2007 (docket entry # 18), Turner argued that he was coerced at sentencing into agreeing that he was responsible for 150 to 500 grams of crack based on incorrect information from the prosecutor. He then argued that he could not be sentenced based on quantities not charged in an indictment and found by a jury, citing *Apprendi v. New Jersey*, 530turner U.S. 466 (2000).

## **Background**

Law enforcement officers began investigating Turner after an informant told them that he had sold substantial quantities of crack cocaine to Turner. An undercover officer made two separate purchases of crack (totaling 2 grams) from Turner in June of 2002. In February of 2004, officers had an outstanding warrant for Turner, and attempted to stop him when they saw him driving. He did not stop, but instead drove to a residence, and then began walking toward the residence. When police told him he was under arrest he refused to stop. They eventually arrested him after a scuffle that included their use of a taser on him multiple times. When they searched him after the arrest they found 13.6 grams of crack cocaine and 3.2 grams of powder cocaine in his pocket.

Turner ultimately pleaded guilty to one count of possession with intent to distribute more than five grams of crack cocaine. At the plea hearing, he admitted

that he possessed the 13.6 grams of crack and 3.2 grams of powder cocaine on the date of his arrest, but he did not agree to other relevant conduct alleged by the government. The parties agreed to that relevant conduct would be left for determination at sentencing.

Turner was represented by Jeffrey Rosanswank of the Federal Public Defender's office initially and at the time of his guilty plea. After the plea, Rosanswank learned that he had a conflict of interest because Turner's interests were adverse to another client Rosanswank had been appointed to represent. Rosanswank did not know of the conflict until after the plea, and he promptly informed the court and sought leave to withdraw in both cases. The court allowed him to withdraw and appointed attorney Eugene Milzark, who represented Turner from that point forward, including at sentencing and afterward.

The presentence report concluded that there was a total offense level of 34, which resulted from a base offense level of 36 (because Turner was responsible for at least 500 grams of crack) with two levels deducted for acceptance of responsibility. Turner objected to the quantity and to the lack of the third level reduction for acceptance of responsibility. The government objected to the lack of an enhancement for reckless endangerment during flight, based on Turner's struggle at his arrest, and also argued that he should not receive the 2 levels off for

acceptance of responsibility, because he had objected to the presentence report.

Shortly before the contested sentencing hearing was to begin, counsel informed the court that they had resolved their objections with an agreement that defendant would admit responsibility for at least 150 grams of crack cocaine, for a base offense level of 34, the defendant would receive two levels off for acceptance of responsibility, both sides would withdraw their objections to the presentence report (so they agreed that the total offense level was 32), and the parties would recommend to the court that defendant be sentenced to a term of 151 months, which was the bottom of the guidelines resulting from the parties' agreement. I questioned Turner extensively about this agreement and told him that if I accepted it I would sentence him to 151 months. I also explained that he did not have to accept it, and that he had a right to a sentencing hearing instead. He stated that he understood and agreed. I then approved the agreement and sentenced Turner to 151 months, as recommended by the parties. As noted above, that sentence was later reduced to 121 months because of the amendments to the crack cocaine sentencing guidelines.

## **Discussion**

Turner alleges that his counsel was ineffective for advising him not to appeal the sentence and for advising him to accept the plea agreement. He also

alleges that his initial counsel labored under a conflict of interest. He alleges that he was coerced at sentencing to agree that he was responsible for 150 grams of crack. He also argues that the evidence against him was seized in violation of his fourth amendment rights because the warrant on which he was initially arrested was later dismissed. All of these claims are conclusively refuted by the record in the case.

The Sixth Amendment establishes the right of the criminally accused to have the assistance of counsel in his defense. The United States Supreme Court has further recognized that "the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order for a convicted defendant to prove that his counsel was ineffective, he must first show that counsel's performance was deficient. This showing of deficiency requires that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. The defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of an attorney's performance must be highly deferential, and the courts employ a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Second, a defendant must show prejudice as a result of counsel's ineffectiveness. That is,

alleges that his initial counsel labored under a conflict of interest. He alleges that he was coerced at sentencing to agree that he was responsible for 150 grams of crack. He also argues that the evidence against him was seized in violation of his fourth amendment rights because the warrant on which he was initially arrested was later dismissed. All of these claims are conclusively refuted by the record in the case.

The Sixth Amendment establishes the right of the criminally accused to have the assistance of counsel in his defense. The United States Supreme Court has further recognized that "the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order for a convicted defendant to prove that his counsel was ineffective, he must first show that counsel's performance was deficient. This showing of deficiency requires that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. The defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of an attorney's performance must be highly deferential, and the courts employ a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Second, a defendant must show prejudice as a result of counsel's ineffectiveness. That is,

he must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694; *Rogers v. United States*, 1 F.3d 697, 699-700 (8th Cir. 1993). To show ineffective assistance of counsel in the context of a guilty plea, a movant must establish: (1) counsel's performance fell below the *Strickland* standard of reasonableness; and (2) there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty but would have proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985).

Turner has not shown that either his initial counsel's or his later counsel's representation fell below a reasonable level of professional assistance or that he was prejudiced by any alleged deficiency.

With regard to Rosanswank's conflict of interest, Turner has not shown that the conflict affected Rosanswank's representation of him in any way. While a defendant is entitled to representation that is free from conflicts of interests, a defendant must show that a conflict of interest actually affected the adequacy of counsel's performance. *See Ausler v. United States*, 545 F.3d 1101, 1104 (8th Cir. 2008), (citing *Mickens v. Taylor*, 535 U.S. 162 (2002)). Here, Rosanswank withdrew and was replaced by Milzark before the case was final. Had there been prejudice to Turner because of the conflict, he had ample opportunity before the

case was final to complain of prejudice, and we would have been able to address any prejudice at that time. But Turner did not complain of prejudice then, and he has not shown any prejudice now.

Rosanswank did not know of the conflict at any time when he was advising Turner of anything, and as soon as he learned of it he withdrew from both cases. Turner was questioned under oath about his desire to plead guilty, and repeatedly stated that he wished to do so. After Milzark was appointed, Turner went forward and did not ask to withdraw his plea or claim that he had been somehow forced to plead guilty. This case is somewhat similar to *United States v. Ramon-Rodriguez*, 492 F.3d 930, 945 (8th Cir. 2007), where the court rejected a challenge that an earlier counsel had labored under a conflict when that counsel had been replaced before trial. There is no evidence that Rosanswank's representation was affected in any way by the conflict, which he did not even know about at the time of the plea, and this claim of ineffective assistance must fail.

Turner next argues that he was somehow coerced into agreeing at sentencing that he was responsible for 150 grams of crack cocaine. But he was questioned extensively about his decision to agree to this quantity as part of the resolution of both his and the government's objections to the presentence report. In exchange for this concession, the government dropped its argument that he

should receive additional levels for reckless endangerment during flight, and its argument that Turner had not accepted responsibility. Turner told me that he understood the agreement and that he wanted to go along with it, including the recommendation for a sentence of 151 months. I told Turner that if this happened, I would approve the recommendation and would sentence him to 151 months, and he told me that is what he wanted to do. He understood his rights and agreed to make the concession, in exchange for the government's concessions. His claim now that he was somehow coerced contradicts his own statements at the sentencing hearing, and cannot form a basis for § 2255 relief.

Turner also argues that attorney Milzark was ineffective for advising him not to appeal. But there was nothing to appeal: Turner had agreed to the sentencing guidelines and to the sentence he received, so counsel could not have been ineffective for advising him not to appeal.

Finally, Turner argues that the evidence against him was seized in violation of his Fourth Amendment rights because, he claims, the warrant that formed the basis for the initial stop of him was invalid. This claim is not cognizable in a § 2255 claim. *See Thompson v. United States*, 7 F.3d 1377, 1379 (8th Cir. 1993). Additionally, Turner was advised that he was waiving this issue as well as all others, both when he withdrew his motion to suppress and when he pleaded guilty.

I will not hold an evidentiary hearing on this matter. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (2008) (internal quotation marks omitted). "No hearing is required, however, 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" *Id*. (quoting *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007)). Because the records here conclusively show that movant is not entitled to relief as a matter of law, I need not hold a hearing.

Accordingly,

**IT IS HEREBY ORDERED** that the motion to vacate, set aside or correct sentence [#1] is denied.

**IT IS FURTHER ORDERED** that Turner's motions to compel, to appoint counsel, and for leave to file a request for production of documents [#7, 10, 21] are denied as moot; and his motion for leave to supplement reply [#18] is granted and I have considered the information contained in that document.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as movant has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accord with this Memorandum and Order is entered this same date.

                _____
                CATHERINE D. PERRY
                UNITED STATES DISTRICT JUDGE

Dated this 8th day of June, 2009.